BENIGNO, DIONISIO y JUAN TRIGO, demandantes y apelantes, *v.* JAMES R. BEVERLEY, en su carácter de albacea testamentario, etc., et al., demandados y apelados.

Núm. 10427.—*Sometido:* Mayo 9, 1951. *Resuelto:* Junio 6, 1951.

*McConnell & Valdés*, abogados de los apelantes; *José López Baralt, James R. Beverley, Alfonso Miranda Esteve, Guillermo Silva, Juan E. Géigel* y *Emilio de Aldrey*, abogados de los apelados.

EL JUEZ ASOCIADO SEÑOR SNYDER emitió la opinión del tribunal.

El 31 de marzo de 1948 Belén Sarah de Orbeta Viuda de Trigo otorgó testamento abierto ante el Lic. Rafael Castro

Fernández como notario. Con posterioridad al fallecimiento de la testadora el 2 de marzo de 1949, tres de sus herederos instituyeron pleito ante el tribunal de distrito solicitando la nulidad del testamento, demandando a los otros herederos y al Lic. James. R. Beverley, albacea testamentario y fiduciario de aquella parte de la herencia dejada a dos de los nietos de la testadora. Luego de un juicio en los méritos, la corte inferior dictó sentencia a favor de los demandados, contra la cual los demandantes han apelado.

El artículo 630 del Código Civil, ed. 1930, provee que "No podrán ser testigos en los testamentos: . . . 7. Los dependientes, amanuenses, criados, o parientes dentro del cuarto grado de consanguinidad o segundo de afinidad, del notario autorizante." Sostienen los demandantes que el testamento aquí envuelto es nulo por el fundamento de que los abogados Rafael Rodríguez Lebrón e Iván Reichard, dos de los testigos, son dependientes o amanuenses del notario Castro Fernández.

Las partes estipularon que Beverley tiene un bufete en San Juan del cual es el único dueño; que Castro Fernández, Rodríguez Lebrón y Reichard son empleados de Beverley, de quien reciben un sueldo mensual fijo y una bonificación; que para el 1948 estos abogados recibieron ciertas cantidades que se incluyen en la estipulación como sueldos y bonificaciones; que durante el 1948 la testadora era cliente de Beverley; que el bufete de Beverley cobró los correspondientes honorarios por el otorgamiento de este testamento; y que ninguna parte de estos honorarios llegó a manos de Castro Fernández, cuyos servicios fueron compensados como empleado de dicha oficina mediante su sueldo y la bonificación.

Beverley declaró que Castro Fernández, Rodríguez Lebrón y Reichard eran todos empleados suyos; que ninguno de ellos tiene un contrato fijo; que ellos no tienen derecho a la bonificación, sino que él la fija a su discreción; que él distribuye el trabajo en su oficina e impone las obligaciones a los abogados; que ninguno de los abogados en su oficina, inclu-

yendo a Castro Fernández, puede requerir a cualesquiera de los otros abogados para que le ayude en un asunto determinado; que "Si Castro quiere que uno de esos muchachos le ayude a él, él viene donde mí y dice 'éste es un asunto importante o grande y yo necesito la ayuda de otro abogado.' Entonces yo preguntaría '¿cuál abogado prefiere usted?' Él diría Rodríguez, o López, o Iván, u otros abogados. Eso ha ocurrido muchas veces, que él ha pedido la ayuda de otros, pero es por conducto mío"; que no hay jerarquías en su oficina; que en lo que a él concierne, todos los abogados en su oficina están en el mismo nivel, no obstante recibir sueldos diferentes, basados en la experiencia, habilidad y otros factores.

A la luz de lo antes expuesto, no creemos que la corte inferior cometió error al manifestar tanto en sus conclusiones de hecho como en sus conclusiones de derecho, que a la fecha en que se otorgó el testamento Rodríguez Lebrón y Reichard no eran amanuenses o dependientes de Castro Fernández, el notario que autorizó el testamento, sino más bien que tanto ellos como Castro Fernández eran empleados de Beverley. Los demandantes arguyen que el sueldo más alto y la mayor experiencia de Castro nos obligan a resolver que los otros dos abogados eran sus subalternos en la jerarquía de abogados que ellos sostienen existe en la oficina de Beverley. Pero de los autos no surge base alguna para justificar tal conclusión. Podemos concebir una situación en que un bufete funcione a base de escalafones como la hallada en el campo de la milicia. Bajo dichas circunstancias un abogado principiante estaría subordinado a su superior, quien podría darle órdenes, despedirlo o ascenderlo. Y ésa podría ser la manera más eficiente de administrar un bufete grande. Pero aquí, una vez más en términos de analogía militar, la prueba demuestra que Beverley se asemejaba más a un Jefe de Estado Mayor con cada uno de sus abogados–empleados a cargo de su propio teatro de operaciones, es decir, a cargo de los casos asignádosle por Beverley.

Castro Fernández no empleó y no podía despedir a Rodríguez Lebrón ni a Reichard. Tampoco podía ordenarles que trabajaran para él en determinado asunto. A lo sumo podía solicitar su ayuda en un caso específico únicamente a través de Beverley. Bajo estas circunstancias, no podemos resolver que ellos estaban en forma alguna subordinados a él, en la jerarquía que suponen los demandantes, a pesar del hecho de que Castro Fernández tenía más experiencia, llevaba casos más importantes, y recibía un sueldo y una bonificación mayores que los de ellos. En resumen, Castro Fernández, Rodríguez Lebrón y Reichard eran todos empleados de Beverley y por consiguiente subordinados a él; pero ninguno de ellos era subordinado de ninguno de los otros. La corte inferior en consecuencia no cometió error al resolver que Rodríguez Lebrón y Reichard no eran dependientes o amanuenses de Castro Fernández, el notario que autorizó el testamento, bajo el artículo 630 del Código Civil.

Éste es un caso nuevo ante este Tribunal. Ninguno de los casos citados por las partes del Tribunal Supremo de España es decisivo sobre este punto. Sin embargo, no convenimos con los demandantes en que el Tribunal Supremo de España ha resuelto que la prohibición del artículo 630 se aplica a personas "ligadas" en forma alguna al notario. Véanse Sentencias del 6 de julio de 1914, 1 de diciembre de 1927 y 26 de diciembre de 1932. Es cierto que en la última el Tribunal Supremo de España se refirió a los testigos inhábiles como "ligados" al notario. Pero los hechos de dicho caso fueron que los testigos eran amanuenses o escribientes que trabajaban para el notario y estaban sujetos a sus órdenes. Creemos que el Tribunal Supremo de España tuvo por miras limitar su decisión a dicha situación de hechos, y no ampliar el obvio significado del artículo 630 para incluir no solamente a los verdaderos dependientes, amanuenses o criados, sino también a cualquier persona "ligada" en cualquier forma al notario. Véanse 2 Enciclopedia Jurídica Es-

pañola 690; 10 íd. 755; 5 Manresa, Comentarios al Código Civil Español, 5ta. ed., pág. 446.

 Una vez que hemos llegado a la conclusión de que Rodríguez Lebrón y Reichard no estaban incapacitados para actuar como testigos del testamento, los otros errores caen por su propio peso. Ellos son que la corte inferior cometió error (1) al denegar la solicitud de los demandantes al efecto de que se entendiese enmendada la demanda de acuerdo con la prueba, (2) al rechazar como prueba un *exhibit* demostrativo de que Rodríguez Lebrón y Reichard actuaron como testigos en documentos otorgados ante el notario Castro Fernández en varias otras ocasiones, (3) al manifestar que la prohibición aquí envuelta no se aplica a abogados, y (4) al resolver que la declaración de Rafael A. González, uno de los testigos del testamento, no prueba las alegaciones de la demanda.

Los primeros dos errores se refieren a un esfuerzo de los demandantes para demostrar una práctica establecida por Castro Fernández en usar a Rodríguez Lebrón y a Reichard como testigos de sus documentos notariales. Pero una vez resuelto que eran testigos idóneos, la existencia de esta supuesta práctica se torna irrelevante. Es innecesario examinar el *dictum* de la corte inferior atacado en el tercer error ya que hemos resuelto que, aun aplicándole el artículo 630 a abogados, Rodríguez Lebrón y Reichard no eran amanuenses o dependientes de Castro Fernández y por consiguiente no estaban incapacitados para servir como testigos bajo el artículo 630. Los propios demandantes no discuten el error en relación con la declaración de Rafael A. González. En su consecuencia es innecesario que lo discutamos.

Sostienen los demandantes que el confirmar la sentencia en este caso equivaldría a sancionar una práctica en que los testigos de un testamento trabajan en el mismo bufete que el notario autorizante del testamento y en consecuencia probablemente no declararían, después de la muerte del testador, que no se cumplieron las formalidades exigidas por la ley al

otorgarse el testamento. Pero si ésta es una práctica inde-
seable, el remedio compete a la Legislatura y no a nosotros.
*La sentencia del tribunal de distrito será confirmada.*